DENNIS L. KENNEDY
Nevada Bar No. 1462
JOSEPH A. LIEBMAN
Nevada Bar No. 10125
BAILEY-KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada  89148-1302
(702) 562-8820 Telephone
(702) 562-9921 Facsimile
dkennedy@baileykennedy.com
jliebman@baileykennedy.com

WILLIAM B. FEDERMAN (*admitted pro hac vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma  73120
(405) 235-1560 Telephone
(405) 239-2112 Facsimile
wbf@federmanlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KEVIN DROVER, individually and on
behalf of all others similarly situated,

        Plaintiffs,

v.

LG ELECTRONICS USA, INC.,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.  2:12-cv-00510-LRH-VCF

**PLAINTIFF'S OPPOSITION TO
DEFENDANT LG ELECTRONICS
USA, INC.'S MOTION TO DISMISS
THE SECOND AMENDED
COMPLAINT**

///

///

///

///

///

///

# TABLE OF CONTENTS

STATEMENT OF FACTS ................................................................................................1

ARGUMENTS AND AUTHORITIES.........................................................................3

I.  Applicable Standard.........................................................................................3

II.  Nevada Law Applies to Plaintiff Drover's Consumer Claims............................3

III.  Plaintiff Has Stated a Valid Claim for Violation of the Nevada Deceptive Trade Practices Act..................................................................................................................9

    A.  Plaintiff Has Stated the Claim with Sufficient Particularity....................................9

    B.  Plaintiff's Claim Is Not Precluded by the Expiration of the Warranty Time Period ................................................................................................................12

IV.  Plaintiff Drover's Class Claims Should Not Be Dismissed.................................14

CONCLUSION..............................................................................................16

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Aguayo v. U.S. Bank,* 653 F.3d 912 (9th Cir. 2011) ...................................................... 5

*Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) ...................................................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 3

*Chin v. Chrysler Corp.,* 182 F.R.D. 448 (D.N.J. 1998) ................................................. 9

*David B. Lilly v. Fisher,* 18 F.3d 1112 (3d Cir. 1994).................................................... 6

*Dix v. ICT Group, Inc.,* 106 P.3d 841 (Wash. App. 2005) ............................................ 5

*Doniger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304 (9th Cir. 1997) ................................... 14

*FBN Food Services, Inc. v. Sizzler Restaurants International, Inc.,* 1990 WL 103228 (N.D. Ill. July 18, 1990)................................................................................................ 4

*Frasure v. United States,* 256 F.Supp.2d 1180 (D. Nev. 2003)................................... 10

*Garner v. Bank of America Corp.,* 2014 WL 194142 (D. Nev. May 13, 2014) ........... 11

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ....................................... 3

*Hadel v. Willis Root Consulting, Inc.,* 2010 WL 5055776 (D. Nev. Dec. 3, 2010)...................... 10

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,* 174 F.R.D. 332 (D.N.J. 1997).......... 5, 9

*In re Gen. Motors Corp. Dex-Cool Prods. Liability Litig.,* 241 F.R.D. 305 (S.D. Ill. 2007) ......... 9

*In re Grand Theft Auto Video Game Consumer Litigation (No. II),* 251 F.R.D. 139 (S.D.N.Y. 2008) ................................................................................................................... 8

*In re Sony Grand Wega KDF-E A 10/A20 Series Rear Projection HDTV Television Litigation,* 758 F.Supp.2d 1077 (S.D. Cal. 2010)................................................... 13

*MacDonald v. Ford Motor Co.,* 2014 WL 1340339 (N.D. Cal. Mar. 31, 2014) .......................... 12

*Maniscalco v. Brother International (USA) Corp.,* 709 F.3d 202 (3d Cir. 2013) ..................... 6, 7

*Mazza v. American Honda Motor Co., Inc.,* 666 F.3d 581 (9th Cir. 2012)................................. 8, 9

*Moheb v. Nutramax Laboratories, Inc.,* 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012)................ 16

*Montich v. Miele USA, Inc.,* 849 F.Supp.2d 439 (D.N.J. 2012) ..................................... 7

*Nelson v. Herr,* 163 P.3d 420 (Nev. 2007) ................................................................. 11

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.,* 320 F.3d 920 (9th Cir. 2003) ............................................................................... 3

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004) ........... 3

*Picus v. Wal-Mart Stores, Inc.,* 256 F.R.D. 651 (D. Nev. 2009) .................................................. 14

*Progressive Insurance Co. v. Sacramento County Coach Showcase,* 2008 WL 5377993 (D. Nev. Dec. 23, 2008) ........................................................................................................................ 13

*Tesoro Gold Co. v. Johnston,* 2009 WL 736017 (D. Nev. March 20, 2009) ................................. 5

**<u>Rules</u>**

Fed. R. Civ. P. 9(b) ..................................................................................................................... 10

**<u>Other Authorities</u>**

Restatement (Second) of Conflicts of Laws, § 148(2) ............................................................. 6, 7

Plaintiff, Kevin Drover ("Plaintiff") hereby submits this response and opposition to Defendant LG Electronics USA, Inc.'s ("LG" or "Defendant") Motion to Dismiss the Second Amended Class Action Complaint ("Complaint").  Plaintiff requests that this Court deny this most recent version of Defendant's Motion to Dismiss and allow this case to proceed to discovery and a resolution on the merits.

## STATEMENT OF FACTS

Plaintiff's action involves identified LG plasma and LCD televisions, including models 32LC2D, 37LC2D, 42LC2D, 42PC3D, 42PC3DV, 47LC7DF and 50PC3D (the "Televisions"). [Complaint at ¶1]. Plaintiff alleges that the Televisions' printed wiring boards (also known as printed circuit boards) ("PWBs") prematurely fail during normal operation. *Id* at ¶7. The PWBs incorporate integrated components such as circuit chips, resistors, surface capacitors and chip capacitors. *Id*. A well-designed and manufactured television will have PWBs that will last the expected useful life of the Television. *Id*.

The PWBs of the Televisions prematurely fail due to voltage overload, ripple current, and thermal fatigue. *Id*. at ¶8. Voltage overload and thermal fatigue can be caused by insufficient cooling fans, heat sinks and other ventilation issues. *Id*.  The premature failure is caused by design and manufacturing defects. *Id*. The Televisions are defectively designed and/or use defective materials because normal operation and usage of the Televisions exposes the PWBs to excessive heat and/or excessive voltage, which, in turn, causes them to fail. *Id*. at ¶9. Therefore, the Televisions fail before expiration of their expected useful life.  *Id*.  As a result of the design defect in the Televisions, numerous purchasers of these Televisions have complained to LG, as evidenced by the numerous complaints found on the Internet.  *Id*. at ¶11.  LG has had actual knowledge of the design defect in the Televisions.  *Id*.  Despite this knowledge of the Defect, LG has refused to

1

pay for labor or diagnostic expenses for consumers with Televisions manifesting the Defect more than a year after purchase (after the expiration of the twelve month parts and labor warranty), and LG has refused to pay any part of the cost of repairing Televisions which manifest the Defect one year after purchase. *Id*. at ¶13.

Consumers of LG's Televisions could reasonably expect their Televisions to function well beyond the twelve month parts and labor warranty provided by LG's boiler-plate warranties. *Id*. at ¶14. LG knew that the defective design of the Televisions would render the time limitations in its written warranty grossly inadequate to protect consumers from the Defect, and would subject consumers to expensive repair costs. *Id*. The Defect described here and in the FAC is a material fact related to the reliability and normal operation of the Televisions known only to LG. *Id*. at ¶12. Had Plaintiff and members of the Class known about the defect, they would not have purchased their Televisions. *Id*.

Plaintiff Drover purchased for use in his home in Mesquite, Nevada an LG LCT Television model number 47LC7DF in late 2008 (the "Television"). *Id*. at ¶4. Plaintiff purchased the Television from Best Buy in St. George, Utah. *Id*. Plaintiff also purchased a two year extended warranty. *Id*. In September, 2011, Plaintiff's Television first began exhibiting the Defect described herein – the Television was slow to turn on, and there were clicking noises when turning the Television on. *Id*. The problem gradually worsened, and the Television would take twenty minutes or more to turn on. *Id*. Plaintiff eventually left his Television on all the time. *Id*. In January of 2012, Plaintiff contacted LG via telephone to obtain a repair. *Id*. Plaintiff spent approximately forty-five minutes to one hour on the phone with LG's customer service representative attempting to resolve the problems with the Television. *Id*. The problem could not be resolved, and the LG customer service representative advised Plaintiff that his Television was out of warranty and that

2

Plaintiff would have to pay out-of-pocket for any repairs. *Id*. On March 19, 2012, Plaintiff contacted TV Video Clinic to obtain a repair of his Television. *Id*. He advised TV Video Clinic that his Television was slow to start. *Id*. On March 20, 2012, his Television was repaired by TV Video Clinic. *Id*. TV Video Clinic repaired the Power Board at a cost to Plaintiff of $212.50. *Id*.

## ARGUMENTS AND AUTHORITIES

### I.   Applicable Standard

A Rule 12(b)(6) motion should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("When there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). In considering a motion to dismiss, the court accepts the plaintiff's allegations as true and construes them in the light most favorable to the plaintiff. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003). The sufficiency of the complaint must be determined considering the allegations in their entirety and viewing all facts in the complaint as a whole. *Id*.

There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). As such, a motion to dismiss for failure to state a claim should be denied unless it "appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle him or her to relief." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1229 (9th Cir. 2004).

### II.   Nevada Law Applies to Plaintiff Drover's Consumer Claims

Plaintiff Drover is asserting claims in this case individually and as class representative for Defendant LG's violations of the Nevada Deceptive Trade Practices Act, NRS 598.0903 *et seq.*

("NDTPA").  Defendant LG first argues that, because the defective Television was purchased in Utah, the consumer protection laws of Utah rather than Nevada govern the Plaintiff's claims, and that the Plaintiff's Complaint should be dismissed on this basis.  This is simply not the case.

As an initial matter, Plaintiff asserts that Defendant has waived the conflict of laws issue by failing to raise it in its prior motion to dismiss.  *See FBN Food Services, Inc. v. Sizzler Restaurants International, Inc.,* 1990 WL 103228 (N.D. Ill. July 18, 1990) (finding that plaintiff waived its opportunity to enforce a choice of law provision when it failed to raise the issue in its first motion to dismiss).  In an effort to avoid this result, Defendant contends that "[t]he conflict of laws issue was not ripe until Drover revealed the sections of the NDTPA on which he intended to rely, which he has done only in the Second Amended Complaint."  [Motion at p. 8, n. 1].  This is nonsense.  Plaintiff has consistently asserted claims only under Nevada law, and disclosed that his Television was purchased in St. George, Utah in the First Amended Complaint. (Doc. 70). Defendant LG could and should have raised the conflict of laws issue in its Motion to Dismiss that First Amended Complaint (Doc. 71), but did not.  Plaintiff Drover respectfully submits that the issue has now been waived, and should not be considered by this Court.

It is axiomatic that the purpose of the consumer protection laws enacted by the various states is to protect the citizens of those individual states from fraud and deception.  In discussing the Washington Consumer Protection Act, the court emphasized that:

> The CPA provides that unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. Because its purpose is to protect the public and foster fair and honest competition, the CPA does not exist merely for the purpose of benefitting an individual plaintiff. ***Rather, the statute's purpose is to offer broad protection to the citizens of Washington from unfair or deceptive acts or practices***.  Requiring [plaintiffs] to litigate their CPA claim in Virginia without the benefit of a class action procedure as is allowed in Washington therefore undermines the very purpose of the CPA, ***which is to offer broad protection to the citizens of Washington.***

4

*Dix v. ICT Group, Inc.,* 106 P.3d 841, 845 (Wash. App. 2005) (internal citations and quotations omitted) (emphasis added). *See also Aguayo v. U.S. Bank,* 653 F.3d 912, 917 (9th Cir. 2011) (reversing district court's determination that plaintiff's claims were preempted by federal law, and holding that "[plaintiff's] claims, rooted in California's consumer-protection laws, fall in an area that is traditionally within the state's police powers to protect its own citizens"); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,* 174 F.R.D. 332, 348 (D.N.J. 1997) (stating that "[e]ach plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for citizens under its own laws"). In this case, Plaintiff Drover is a citizen and resident of the state of Nevada. The Television was purchased for use in Plaintiff's home in Nevada, and was situated and in use there when it malfunctioned. Plaintiff is thus entitled to the benefits and protections of the NDTPA.

In support of its argument on this issue, Defendant LG asserts that the consumer protection laws of Utah apply pursuant to the Restatement (Second) of Conflict of Laws, which has been adopted by Nevada. *See Tesoro Gold Co. v. Johnston,* 2009 WL 736017, at *4 (D. Nev. March 20, 2009) (acknowledging that "[f]or tort actions, Nevada has adopted the Restatement (Second) of Conflict of Law's most-significant relationship test to determine the choice of law, unless a more specific section of the Restatement applies to a particular tort"). However, the Defendant's analysis of the factors set forth in § 148(2) is misplaced, and does not support application of the consumer laws of Utah as urged by the Defendant.

Section 148(2) is implicated when, as in this case, the plaintiff's actions involve more than one state. In that situation, the Restatement requires consideration of the following factors to determine which state has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance on the defendant's representations; (b) the place where the plaintiff received the representations; (c)

the place where the defendant made the representations; (d) the domicile, residence, nationality, place of incorporation and place of business of the parties; (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflicts of Laws, § 148(2).  The above factors should be evaluated on a qualitative rather than a quantitative basis.  *David B. Lilly v. Fisher,* 18 F.3d 1112, 1119 (3d Cir. 1994).

Contrary to the conclusion reached by the Defendant, application and analysis of these factors clearly establishes that Nevada's consumer protection laws apply to this case.  Plaintiff concedes that factor (a) favors Utah as the state where the Television was purchased.  Factor (b) favors Nevada as the home state of the Plaintiff and the place where he received the representations regarding the Television.  Factor (c) favors New Jersey as Defendant's principal place of business. With respect to factor (d), while Defendant correctly states that the domicile, residence or place of business of Plaintiff and Defendant is Nevada and New Jersey respectively, the Defendant omits that this factor is weighted in favor on the domicile of the Plaintiff.  In cases of pecuniary loss, "[t]he domicile, residence and place of business of the plaintiff are more important than similar contacts on the part of the defendant because the financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship."  *Maniscalco v. Brother International (USA) Corp.,* 709 F.3d 202, 209 (3d Cir. 2013) (citing §148 cmt. i) (internal quotations omitted).

Factor (e) is the place where a tangible thing that is the subject of the transaction, in this case the Television, was situated.  Defendant equates this without explanation to the place of purchase, and asserts this factor favors Utah.  However, there is no basis for this position, and no reason this factor would be merely duplicative of factor (a).  In this case, the more reasonable

construction is that the Television was situated in Nevada, as that is where the Television was used by the Plaintiff and where it exhibited the defect that is the subject of the action and caused Plaintiff's injury.  *See Montich v. Miele USA, Inc.,* 849 F.Supp.2d 439, 450 (D.N.J. 2012) (finding California to be the state with the most significant relationship to the litigation and emphasizing that plaintiff "took delivery of the [washing] machine in California, used the machine at her home in California, and allegedly suffered injury in California").  Moreover, LG could certainly foresee that a purchase in St. George, Utah, which is in very close proximity to the Arizona and Nevada borders, would be purchased for use in a neighboring state.

Finally, factor (f) inquires as to the place where plaintiff is to render performance under a contract.  While Defendant asserts again that this is Utah as the place where Plaintiff purchased the television, courts have found this factor to be applicable only to situations involving an actual contract.  *See Maniscalco,* 709 F.3d at 208 (finding, in a case involving defective printers, that "[f]actor (f) is not applicable because there is no contract in the case"); *Montich,* 849 F.Supp.2d at 448 (stating that "[t]he sixth factor, subsection (f) of Restatement § 148(2), is inapplicable since there is no contract performance required by Plaintiff").

Accordingly, and contrary to the assertion of Defendant, the only factor that favors Utah in this case is factor (a) as the place of purchase.  Factors (b), (d) and (e) clearly favor Nevada, while factors (c) and (f) are inapplicable, resulting in the conclusion that Nevada consumer law is applicable to this case.  This result "is supported by the author's commentary accompanying § 148(2): If any two of the [148(2)] contacts, apart from the defendant's domicile, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues."  *Maniscalco,* 709 F.3d at 209 (quoting

7

Restatement (Second) of Conflicts of Law § 148, cmt. j).  Nevada is thus the state with the greater interest in the litigation and whose laws should be applied.

The cases relied on by the Defendant do not change this result.  For example, the Ninth Circuit case of *Mazza v. American Honda Motor Co., Inc.,* 666 F.3d 581 (9th Cir. 2012), was an appeal from the district court's decision to certify a nationwide class of all consumers who purchased or leased Acuras containing a certain type of braking system.  The complaint stated four causes of action under California law.  Defendant Honda contended in part that the class could not be certified because there were material differences between the consumer laws of California and those of other states, such that common issues of law would not predominate and certification was improper.  The Ninth Circuit reversed the district court's determination in favor of certification, and emphasized the autonomy of the individual states with regard to consumer protection laws.  In so holding, the court stressed that "[e]very state has an interest in having its law applied to ***its resident claimants***…The automobile sales at issue in this case took place within 44 different jurisdictions, and each state has a strong interest in applying its own consumer laws to those transactions."  *Id.* at 591-592 (emphasis added).  The *Mazza* court's concern is clearly that the consumer protection laws of the purchaser's home state should be applied to the transaction at issue, rather than the laws of a state with a more tenuous connection to the transaction.  The *Mazza* holding thus supports the application of Nevada law in this case.

The same can be said for the case of *In re Grand Theft Auto Video Game Consumer Litigation (No. II),* 251 F.R.D. 139 (S.D.N.Y. 2008), a class action involving the sale of a video game in all fifty states.  The district court initially conditionally certified a settlement class, but reversed that determination and decertified the settlement class based in part on the variations in each state's consumer protection laws.  In so holding, the court acknowledged that:

> In analyzing putative, nationwide, consumer-protection class actions, several courts have determined that the law of the state where each plaintiff resides and purchased the relevant product should apply.  *See, e.g., In re Gen. Motors Corp. Dex-Cool Prods. Liability Litig.,* 241 F.R.D. 305, 316-18 (S.D. Ill. 2007) (determining that law of state where each plaintiff *resides* should apply to claims for breach of warranty); *Chin v. Chrysler Corp.,* 182 F.R.D. 448, 457 (D.N.J. 1998) (deciding that law of each plaintiff's *home state* should apply to claims for fraud and breach of warranty); *In re Ford Motor Co. Ignition Switch Prods. Liability Litig.,* 174 F.R.D. 332, 347-48 (D.N.J. 1997) (holding that law of plaintiff's *home state* should apply to claims for fraud, breach of warranty, and other consumer protection violations).

*Id.* at 146 (emphasis added).  Just as in *Mazza,* the court found the plaintiff's home state to have the most significant contacts with the litigation for purposes of the consumer protection laws.  The same result should obtain in this case, and Plaintiff Drover should be given the benefits and protections of the consumer laws of Nevada.[1]

## III.  Plaintiff Has Stated a Valid Claim for Violation of the Nevada Deceptive Trade Practices Act

### A.  Plaintiff Has Stated the Claim with Sufficient Particularity

In its second argument in support of the motion, Defendant LG asserts that Plaintiff has not stated, and cannot state, a claim pursuant to the NDTPA, and has allegedly failed "to identify a single misrepresentation that was made to him or that he relied on in making his purchase with the requisite particularity."  [Motion to Dismiss at *12].  Defendant made essentially the same argument in its Motion to Dismiss Plaintiff's First Amended Complaint, in response to which the Court determined as follows:

> Unlike plaintiff's original complaint, the amended complaint pleads with sufficient particularity to meet the enhanced standards of rule 9(b).  The amended complaint specifies that plaintiff purchased the television at issue in late 2008 from a best Buy store in St. George, Utah.  The defect began to affect the television in September 2011.  In January 2012, plaintiff contacted defendant seeking technical assistance

---

[1] In the event this Court determines otherwise, Plaintiff requests that he be given leave to amend his Complaint to assert claims under Utah law, particularly considering the fact the LG raised this argument for the first time in this iteration of its Motion to Dismiss.

and was told that the television's warranty had expired.  On March 19, 2012, plaintiff paid a third party to repair the television.

The complaint states that defendant received complaints from numerous consumers regarding the alleged defect in the televisions, yet defendant continued to sell the televisions, refused to issue a recall, and failed to offer repairs despite its knowledge of the defect.

Therefore the court finds that plaintiff has clearly alleged that defendant misled plaintiff and other consumers because it had knowledge of the defect and affirmatively concealed it.  Plaintiff's account provides substantial detail as to when he purchased the television and contacted defendant to request a repair, specifying that defendant did not disclose the defect on either occasion.  These allegations give clear notice to defendant of the particular misconduct involved in plaintiff's complaint and allow defendant to fully defend itself against the claim.  Thus, the court finds that dismissal of this claim pursuant to rule 9(b) is not warranted.

[Doc. 76, Order, May 22, 2014].

Plaintiff's Second Amended Complaint that is the subject of Defendant LG's current motion contains the same allegations that were the basis of the Court's ruling.  If such allegations were sufficient to withstand a motion to dismiss with regard to the First Amended Complaint, the same conclusion should be reached this time as well.[2]

Despite this Court's prior ruling, Defendant LG argues that Plaintiff has not met his burden under Fed. R. Civ. P. 9(b) to state his claims with particularity.  Defendant first asserts that

---

[2] LG appears to be seeking reconsideration of the Court's May 22, 2014 Order without explaining why such reconsideration is appropriate.  "A motion to reconsider must provide a court with valid grounds for reconsideration by: (1) showing some valid reason why the court should reconsider its prior decision and (2) setting forth facts or law of a strongly convincing nature to persuade its decision to reverse its prior decision." *Frasure v. United States,* 256 F.Supp.2d 1180, 1183 (D. Nev. 2003) (internal citation omitted). Reconsideration is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or its decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.*

In order to meet the "clear error" standard above, "a decision must strike the court as more than just maybe or probably wrong; it must strike the court as wrong with the force of a five-week-old unrefrigerated dead fish." *Hadel v. Willis Root Consulting, Inc.,* 2010 WL 5055776, at *1 (D. Nev. Dec. 3, 2010).  "Finally, motions for reconsideration are not the proper vehicles for rehashing old arguments, and are not intended to give an unhappy litigant one additional chance to sway the judge." *Id.*

§598.0915 of the NDTPA, specifically §§ 598.0915(5), (7) and (15), require an affirmative misrepresentation on the part of the Defendant and cannot be based on omissions as a matter of law.  However, Nevada law is well-established that "the suppression or omission of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist."  *Garner v. Bank of America Corp.,* 2014 WL 194142, at *8 (D. Nev. May 13, 2014) (quoting *Nelson v. Herr,* 163 P.3d 420, 426 (Nev. 2007)).  As a result, the fact that Plaintiff's claims are based on omissions by LG rather than affirmative statements is of no moment, and does not preclude recovery under NDTPA §§ 598.0915(5), (7), and (15).

Defendant also reasserts its argument that Plaintiff has failed to plead the circumstances of any fraudulent omission with the requisite particularity.  This Court has specifically found to the contrary, as set forth above.  This ruling was clearly correct, as Plaintiff's Complaint included the following factual averments:  Plaintiff alleged that the PWBs of the Televisions contain an inherent design defect which leads to premature failure due to voltage overload, ripple current, and thermal fatigue caused by insufficient cooling fans, heat sinks and other ventilation issues. [Complaint at ¶8]. The Televisions are defectively designed and/or use defective materials because normal operation and usage of the Televisions exposes the PWBs to excessive heat and/or excessive voltage, which, in turn, causes them to fail before the expiration of their expected useful life. *Id.* at ¶9.  Plaintiff alleged that LG had actual knowledge of this design defect due to the number of consumer complaints Defendant received and due to the presence of voluminous complaints posted on the internet, such as at AVForums.com, Badcaps.net Forum, and Electro Tech Online. *Id.* at ¶11. In addition, an article at http://en.wikipedia.org/wiki/Capacitor_plague describes the issue with a rash of capacitors with higher than expected premature failure rate, beginning in

September 2002. The article notes that there were many publicized press releases about the widespread problem with premature failures in various electronic equipment.

These allegations are more than sufficient to meet Plaintiff's pleading burden, particularly given the more relaxed standard for pleading claims based on an omission.

> Typically, averments of fraud must be accompanied by the who, what, when, where and how of the misconduct charged, but claims based on an omission can succeed without the same level of specificity required by a normal fraud claim. This is because a plaintiff alleging an omission-based fraud will not be able to specify the time, place and specific content of an omission as would a plaintiff in a false representation claim. Because the plaintiffs are alleging a failure to act instead of an affirmative act, the plaintiffs cannot point out the specific moment when the defendant failed to act.

*MacDonald v. Ford Motor Co.,* 2014 WL 1340339, at *6 (N.D. Cal. Mar. 31, 2014). In *MacDonald,* the court determined that the Plaintiff had adequately alleged the who, what, when and where, "given the inherent limitations of an omission claim." *Id.* The court found that "the 'who' is Ford, the "what' is its knowledge of a defect, the 'when' is prior to the sale of Class Vehicles, and the 'where' is the various channels of information through which Ford sold Class Vehicles." *Id.* The same can be said in this case. The "who" is Defendant LG, the "what" is LG's knowledge of the defect in the PWBs, the "when" is prior to the time Plaintiff Drover and the class members purchased their defective Televisions, and the "where" is the channels through which Defendant distributed and sold the Televisions. Just as in *MacDonald,* Defendant's motion to Dismiss Plaintiff's Complaint in the face of these allegations should be denied.

**B.    Plaintiff's Claim Is Not Precluded by the Expiration of the Warranty Time Period**

Defendant LG next asserts that Plaintiff's claim under the NDTPA should be dismissed because the defect in his Television did not manifest itself until after the expiration of the warranty period. Defendant argues that any such defect is not "material" as required by NRS § 598.0923(2),

and states that "[t]he *only* reasonable expectation that Drover could have had regarding the life of his television was that it would perform as warranted throughout the warranty period."  [Motion to Dismiss at p. 15].  In support of this proposition, Defendant LG relies on case law that is largely from California courts.  However, the case law is not as absolute as Defendant contends.  For example, in *In re Sony Grand Wega KDF-E A 10/A20 Series Rear Projection HDTV Television Litigation,* 758 F.Supp.2d 1077, 1089 (S.D. Cal. 2010), the court indicated that the conclusion might well be different if the plaintiff offered sufficiently particularized allegations showing that the defendant was aware of the defect when plaintiff purchased the television.  Plaintiff Drover has offered just such particularized allegations in this case and thus his claims regarding the defect would not be precluded.

Moreover, as stated above, the cited cases are not Nevada decisions and are not construing the sections of the NDTPA that Plaintiff Drover is relying on.  Nonetheless, Defendant asserts that Nevada would adopt a similar rule based on the case of *Progressive Insurance Co. v. Sacramento County Coach Showcase,* 2008 WL 5377993 (D. Nev. Dec. 23, 2008).  However, as Defendant concedes, *Progressive Insurance* involved only claims for express and implied warranty, and did not implicate the NDTPA at all.  As a result, that case does not establish Nevada law with respect to the NDTPA and does not foreclose Plaintiff's claims in this case.

In this connection, Defendant LG asserts that Plaintiff cannot state any cognizable loss caused by the non-disclosure.  Defendant's arguments on this issue are the same as set forth above: that "non-disclosure of a 'defect' that manifests itself outside of the warranty period does not constitute a 'substantial injury' to consumers as required to state a claim **under California's Unfair Competition Law.**"  [Motion to Dismiss at p. 17-18] (emphasis added).  However, this case is not brought under California's Unfair Competition Law, and as Defendant acknowledges,

13

"Nevada courts have not addressed this issue…." [Motion to Dismiss at p.17]. Plaintiff respectfully asserts that Nevada courts would not follow this line of authority, as such improperly absolves a defendant for responsibility with regard to known defective products. In any event, the case law relied on by Defendant is not precedential, and this Court should deny Defendant's Motion to Dismiss in reliance thereon.

## IV.     Plaintiff Drover's Class Claims Should Not Be Dismissed

Defendant LG's final argument in support of its Motion to Dismiss is that Plaintiff's class claims should be dismissed even if this Court determines that Plaintiff's claims should survive on an individual basis. In support of this argument, Defendant relies primarily on the case of *Picus v. Wal-Mart Stores, Inc.,* 256 F.R.D. 651 (D. Nev. 2009), for the proposition that class allegations may appropriately be dismissed if the plaintiff does not allege facts sufficient to describe a class as a matter of law. [Motion to Dismiss at p. 22]. In making this argument, the Defendant omits the threshold portion of the *Picus* court's holding, which is that "dismissal of class allegations at the pleading stage ***should be done rarely*** and…the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery." *Id.* at 655 (emphasis added). The court also quoted the case of *Doniger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir. 1997) for the proposition that "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action is maintainable." *Id.* (internal punctuation omitted).

This is particularly true in this case as, despite the assertions of Defendant, Plaintiff's asserted class satisfies the requirements of Rule 23 such that dismissal at this stage of the proceedings would be improper. Defendant LG first asserts that Plaintiff's claims are not typical of those of the class because Plaintiff purchased his Television in Utah rather than Nevada,

14

requiring the application of Utah law. As discussed above, Nevada law is clearly applicable to Plaintiff's claims as the law of his home state, and the state that has the greater interest in this transaction. Plaintiff Drover is thus entitled to assert a claim under the NDTPA in this case. Defendant next asserts that Plaintiff is an inappropriate class representative as to the NTDPA claims because he cannot assert express warranty claims. Defendant's argument on this issue is a non sequitur. As Defendant acknowledges, Plaintiff has withdrawn his warranty claims and seeks to represent the class only as to his and the class members' claims pursuant to the NDTPA. To be sure, unless LG has a practice of avoiding its contractual warranty obligations, there would not be class members under express warranty because LG is contractually obligated to fix the television. Defendant's argument is thus without merit and should be disregarded by this Court.

Defendant next asks this Court to determine, at this very early stage of the proceedings and as a matter of law, that the individual issues of causation, reliance and damages will predominate so as to prevent class certification, and dismiss Plaintiff's class claims on that basis. However, all of the cases relied on by Defendant in support of this proposition are distinguishable from the case at bar, and establish that dismissal of the Plaintiff's claims would be improper. It should be emphasized that this case involves omissions on the part of LG: Plaintiff is asserting that LG knew about the defect in the PWBs, knew that such defect would cause the televisions to fail before the end of their expected useful life and failed to disclose such defect to the purchasers. This is a very different scenario from that presented in *Picus,* for example, which was a suit against Wal-Mart alleging that the company advertised its "Ol' Roy" brand of dog food as being "Made in the USA," when in fact it was not. The court held that it would be necessary to determine whether each class member relied on or even saw the label when purchasing the product, and dismissed the class claims largely on that basis.

15

The same is true with regard to *Moheb v. Nutramax Laboratories, Inc.,* 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012).  The product at issue in that case was Cosamin DS, a product advertised by the defendant to reduce joint pain.  Just as in *Picus,* the court found that some members of the class may never have seen the defendant's representations.  "[S]ome of the class members may have relied on the representations of doctors, veterinarians, reviews, articles or retailers' sales pitches, and, thus, Defendant's statements about joint pain were of no importance to them."  *Id.* at *4.  This difficulty is not presented in this case, as Plaintiff and the class members merely purchased the LG Televisions assuming the products would last for their expected useful life.  Instead, the televisions manifested a defect that was known to LG and which prevented the televisions from being used as expected by Plaintiff and the class members.

As to the issue of damages, Plaintiff describes the proposed class as all purchasers of *defective* LG plasma and LCD Television sets in the state of Nevada.  [Complaint at ¶ 1].  The class would thus not include persons whose Televisions worked as expected and would not present a problem with calculation of the damages as asserted by Defendant.  Damages in this case will be easily capable of measurement on a classwide basis, and Defendant's contentions to the contrary should be rejected by this Court.  This Court should thus adopt the better course of action as endorsed in *Picus*: deny Defendant's Motion to Dismiss the class claims and allow the class certification issues to be fully developed through discovery.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this court deny Defendant LG Electronics U.S.A., Inc.'s Motion to Dismiss the Second Amended Complaint in its entirety.  In the alternative, Plaintiff requests leave to file an amended complaint to correct any perceived deficiencies.

16

Dated: September 4, 2014.

Respectfully submitted,
FEDERMAN & SHERWOOD

By: /s/ William B. Federman
WILLIAM B. FEDERMAN
(*admitted pro hac vice*)
10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
(405) 235-1560   Telephone
(405) 239-2112   Facsimile

DENNIS L. KENNEDY
Nevada Bar No. 1462
JOSEPH A. LIEBMAN
Nevada Bar No. 10125
BAILEY KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada  89148-1302
(702) 562-8820   Telephone
(702) 562-8821   Facsimile

*Attorneys for Plaintiff*

17

## CERTIFICATE OF SERVICE

I HERBY CERTIFY on September 4, 2014, I caused a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT LG ELECTRONICS U.S.A., INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** to be served via the U.S. District Court's Notice of Electronic Filing ("NEF") in the above-captioned case, upon the following:

Pat Lundvall (NSBN 3761)
Kristen T. Gallagher (NSBN 9561)
McDONALD CARANO WILSON LLP
2300 W. Sahara Avenue, Suite 1000
Las Vegas, NV 89102
lundvall@mcdonaldcarano.com
kgallagher@mcdonaldcarano.com

Sandra C. Mccallion
S.C. Sohn
Thomas E. Bezanson
Matthew V. Povolny
COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, NY 10022
smccallion@cohengresser.com
scsohn@cohengresser.com
tbezanson@cohengresser.com
mpovolny@cohengresser.com

*Attorneys for Defendant LG Electronics, U.S.A., Inc.*

/s/ William B. Federman
WILLIAM B. FEDERMAN

18