PAT LUNDVALL (NSBN 3761)
KRISTEN T. GALLAGHER (NSBN 9561)
McDONALD CARANO WILSON LLP
2300 W. Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone: 702.873.4100
Facsimile: 702.873.9966
lundvall@mcdonaldcarano.com
kgallagher@mcdonaldcarano.com

SANDRA C. McCALLION (admitted *pro hac vice*)
S.C. SOHN (admitted *pro hac vice*)
THOMAS E. BEZANSON (admitted *pro hac vice*)
CHRISTOPHER M.P. JACKSON (admitted *pro hac vice*)
MATTHEW V. POVOLNY (admitted *pro hac vice*)
COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, NY 10022
Phone: 212.957.7600
Fax: 212.957.4514
smccallion@cohengresser.com
scsohn@cohengresser.com
tbezanson@cohengresser.com
cjackson@cohengresser.com
mpovolny@cohengresser.com

*Attorneys for Defendant LG ELECTRONICS USA, INC.*

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 • FAX (702) 873-9966

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KEVIN DROVER, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

LG ELECTRONICS USA, INC.,

Defendant.

Case No.: 2:12-cv-00510-JCM-VCF

**DEFENDANT LG ELECTRONICS USA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendant LG Electronics USA, Inc. ("LGUSA") submits this Reply in further support of its Motion to Dismiss Plaintiff Kevin Drover's ("Drover") Second Amended Complaint (the "Motion" (Doc. 80) and the "Second Amended Complaint" or "SAC" (Doc. 77)).

This Reply is based upon the points and authorities that follow, the arguments presented in LGUSA's Motion, the pleadings and papers in the Court's file, and such other matters as the Court may wish to consider.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

**POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The Court has afforded Drover three different opportunities to successfully state a claim against LGUSA for consumer fraud. Drover's latest attempt does no more than identify – finally – the sections of the Nevada Deceptive Trade Practices Act (the "NDTPA") under which he purports to bring his claim. Drover's pleading – and his Opposition – make two things clear. First, as LGUSA argued in its Motion, the NDTPA does not apply to his claims. Second, Drover cannot successfully allege consumer fraud under any statutory scheme.

In the Motion, LGUSA argued that Drover's claim should be dismissed in its entirety because Nevada choice of law principles demand that Utah law be applied and, accordingly, Drover has no standing to assert an NDTPA claim. Drover counters by making both a procedural and a merits-based argument. He asserts that LGUSA has waived the right to make this argument, and he performs a choice of law analysis that purports to show that Nevada law applies.

Drover's waiver argument is legally incorrect. The Federal Rules of Civil Procedure and the case law in this Circuit unambiguously allow a defendant to raise a choice of law defense long after the motion to dismiss stage absent a bad faith showing of an intent to delay. LGUSA raised this argument now because Drover has finally identified the statutory basis of his claim. *See* Part IIA1.

Drover's choice of law analysis is built on legal assertions that are demonstrably wrong and case law that is either inapposite or mischaracterized. The parties' submissions make clear that the issue before the Court is whether the state in which the purchase occurred – Utah – or the state in which Drover resides – Nevada – has the greatest interest in having its consumer protection laws applied. As LGUSA discussed in its Motion and in Part IIA2 below, courts have concluded that the state in which a purchase occurred has the paramount interest for purposes of the choice of law analysis.

…

…

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

Drover purchased his television in Utah, so Utah law applies. For the reasons discussed in LGUSA's Motion, Drover cannot satisfy the requirements of the Utah statute so his request to amend to assert this claim should be denied. *See* Part IIA2 n.8.

Drover's Opposition amply illustrates that his claims under the NDTPA are equally futile. The four statutory provisions that Drover invokes require him to allege that LGUSA made affirmative misrepresentations as well as that LGUSA knowingly failed to disclose the alleged defect.

Specifically, sections 598.0915(5), (7), and (15) of the NDTPA protect against misrepresentations. LGUSA pointed out in its Motion that Drover has never identified a single misrepresentation made by LGUSA regarding his television. Motion at 12-14. Tellingly, in his Opposition Drover does not point to anything in the Second Amended Complaint that could be interpreted as a misrepresentation. The *only* conclusion to draw is that there *was no misrepresentation*.

Lacking any misrepresentation, Drover advances two alternative theories: (1) the Court has already determined that he stated a claim for affirmative misrepresentation or (2) he can state a claim under these sections by alleging omissions. Opp. at 9-11.

Drover's first argument misrepresents the record. The Court has *never* made any findings with regard to the sufficiency of Drover's pleading asserting misrepresentations. The Court was never asked to make this ruling because, in response to LGUSA's motion to dismiss challenging the sufficiency of the First Amended Complaint, Drover represented that his claim was based entirely on omissions. Drover's contention that he need not allege misrepresentations under these NDTPA sections does not withstand a reading of the plain language of the statute. These sections are intended to protect consumers against affirmative representations; an entirely different provision speaks to omissions. *See* Part IIB1.

Drover's omission-based claim under NRS 598.0923(2) – or any other section of the statute – is deficient for multiple reasons. In the first instance, Drover has not and cannot state a claim under Rule 12(b)(6) because it is based on an alleged defect that occurred years outside the warranty period. Under well-settled precedent, Drover's claim fails for two reasons that the

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

Court has not yet addressed. First, such an "omission" cannot be "material" as a matter of law because the consumer received the benefit of his bargain. Second, having received the benefit of his bargain, Drover cannot allege that he suffered a cognizable loss. As both are required to state a claim under the NDTPA, Drover's pleading fails.

Drover does not provide any substantive response to these arguments. Instead, he takes issue with LGUSA's citation to precedent outside of Nevada. Opp. at 12-14. Drover fails to identify any contrary authority. The only case to address the issue in Nevada, however, suggests that this District would adopt the well-reasoned and common sense approach that is the norm. *See* Part IIB2.

Drover's omission-based claim fails for the additional reason that he has not satisfied the Rule 9(b) pleading standard for fraud allegations. Drover asserts that LGUSA is barred from making this argument because the Court previously held that his allegations of concealment in the First Amended Complaint were sufficient. Opp. at 10-11. LGUSA's request is entirely proper in this District, where the Second Amended Complaint supersedes the prior filings. LGUSA respectfully suggests that when the Court considers the standard applied in this Circuit, it will find that Drover's allegations fall far short of what is required providing an independent reason to dismiss this claim. *See* Part IIB3.

LGUSA also moved for the class claims to be stricken if the Court permits any of Drover's claims to survive. Motion at 21-26. Drover's primary response is to protest that dismissal of the class claims at the motion to dismiss stage is often inappropriate. When arguing the merits, Drover shows that this is precisely the kind of case that could never survive a certification challenge and thus the class claims should be stricken now to preserve judicial resources. *See* Part IIC.

For the reasons discussed below and in LGUSA's Motion, the Second Amended Complaint should be dismissed in its entirety, with prejudice. In the alternative, LGUSA respectfully requests that the court strike the class claims.

. . .

. . .

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

## II. ARGUMENT

### A. The Second Amended Complaint Should Be Dismissed With Prejudice Because Utah Law Applies To Drover's Consumer Fraud Claims, And He Has No Claim Under Utah Law.

1. LGUSA did not "waive" its choice of law argument.

Citing one case from the Northern District of Illinois, Drover contends that LGUSA has waived its right to raise a choice of law defense to defeat his Second Amended Complaint. Opp. at 4. He asserts that LGUSA was required to raise this issue in response to the First Amended Complaint or forfeit the right forever. *Id.*

Drover confuses the choice of law defense with defenses that must be made or waived under Fed. R. Civ. P. 12(g). In fact, the Illinois case Drover cites makes just this point. Citing to Fed. R. Civ. Proc. 12(g), the court properly held that improper venue is among several specifically enumerated defenses that are waived if they are not raised in a responsive pleading. *FBN Food Services, Inc. v. Sizzler Restaurants, Int'l, Inc.*, No. 90-C-1001, 1990 WL 103228, *3-*4 (N.D. Ill. July 18, 1990) (holding defendant could not move to dismiss an amended complaint for lack of venue under Federal Rule of Civil Procedure 12(b)(3) because the defense was not raised in response to the initial complaint). Choice of law is *not* among the Rule 12(g) enumerated defenses.[1] *See, e.g., Clark v. Willden*, 616 F. Supp. 2d 1038, 1040-41 (D. Nev. 2007) (defendant's second motion to dismiss was properly before the court notwithstanding Rule 12(g) because it was based on failure to state a claim upon which relief could be granted, which is not among the enumerated Rule 12(g) defenses).

Moreover, Ninth Circuit precedent expressly permits a choice of law defense to be raised long after the motion to dismiss stage in the absence of prejudice or bad faith. *See, e.g., General Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995) (choice of law argument not waived although defendant did not seek a ruling on the applicable law to be applied until 21 months into the case where plaintiff showed no evidence of intentional delay).

…

[1] Fed. R. Civ. P. 12(g) also permits a court to use its discretion to bar multiple motions filed "for the sole purpose of delay." *Davidson v. Countrywide Home Loans, Inc.*, No. 09-CV-2694, 2011 WL 1157569, *4 (S.D. Cal. Mar. 29, 2011) (noting that Rule 12(g) does not apply where, as here, the motion to dismiss is filed in response to an amended complaint).

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

In this case, it would have been premature for the Court to consider whether there was a potential choice of law conflict before Drover articulated exactly what claims he was asserting under the NDTPA. *See* Motion at 8 n.1. It was only in the Second Amended Complaint that Drover finally disclosed the sections under which he purports to bring his claim. Once Drover made his claim known, LGUSA properly determined that there was an "actual conflict" between these provisions and the corresponding Utah statute and brought the issue before the Court.

Thus, the defense is properly raised before the Court on this Motion.

2. Utah law applies to Drover's consumer fraud claims.

In its Motion, LGUSA showed that Nevada courts look to the factors identified in the Restatement (Second) of Conflicts of Laws to determine which state's law should apply where a conflict exists. Motion at 9. Drover acknowledges that this is a qualitative, not a quantitative analysis. Opp. at 6.

Drover apparently concedes that there is an actual conflict between the provisions of the NDTPA and the Utah Consumer Sales Practices Act. He disagrees, however, with LGUSA's analysis of the relevant factors and the weight to be given to each. Opp. at 3-9.

The parties seem to agree on two of the factors. Drover concedes that the place where he acted in reliance on the alleged misrepresentations (factor a) – where the transaction occurred – favors Utah law.[2] Opp. at 6. LGUSA agrees that the domicile of the parties (factor c) favors Nevada law. The parties disagree as to the weight to be accorded these two factors.

The parties are also in disagreement about two other factors and their effect on the resulting analysis. Drover asserts that Nevada's interests are favored because he received the alleged misrepresentations (factor b) in Nevada[3] and the television is located there (factor e). Opp. at 6-7.

…

[2] The relevant factors are discussed on page 10 of LGUSA's Motion.

[3] This allegation is *not* made in the Second Amended Complaint or any of its prior iterations. As discussed in Part IIB1, Drover has not identified any alleged misrepresentations at all. Moreover, to the extent Drover's claim is based on an alleged omission, Drover can only be said to have "received" any omission at the point of purchase in Utah. *See* Motion at 10.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

Drover mischaracterizes what courts must consider when looking at these factors. First, under the Restatement, where Drover received the alleged misrepresentations is of little importance. The dispositive issue is where he *acted in reliance* on the alleged misrepresentations:

> [t]he place where the representations were first communicated to the plaintiff . . . is not so important a contact as is the place where the defendant acted in reliance on the defendant's representations.

*See* Restatement § 148 cmt. g. Drover purchased the television in Utah so, necessarily, he acted in reliance on any alleged misrepresentation there. This factor weighs in favor of Utah's law.

Likewise, the location of the television once it has been purchased is irrelevant for the analysis. The Restatement expressly addresses the meaning of "location" of the thing at issue, and it defines "location" as the place where the tangible thing was located *at the time of purchase:*[4]

> When the subject of the transaction between the parties is a tangible thing, the place where the thing is situated *at the time of the transaction* is a contact of some importance . . . .

*See id* § 148(2) cmt. i (emphasis added). Again, that is Utah.

Using the Restatement's definitions, the factors in dispute actually weigh in favor of Utah's interest in the application of its statutory scheme: where Drover received the alleged misrepresentations and where he is using the television is afforded less weight than where he acted in reliance on the alleged misrepresentations and where the television was located at the time of purchase.

At root, Drover's principal argument rests on the fact that he lives in Nevada. He thus argues that this is the controlling factor that takes precedence over all others. Drover then attempts to use the cases that LGUSA cited to show they support this assertion. Opp. at 8-9. They do not.

---

[4] The case Drover cites in support of his definition of location, *Montich v. Miele USA, Inc.*, *see* Opp. at 7, does not address this issue. The transaction at issue there took place in the state of the plaintiff's domicile so the result would have been the same in either case. 849 F. Supp. 2d 439, 447-450 (D.N.J. 2012). The case makes that clear in language Drover failed to include in the quoted language. *Id*. at 450 ("Here, Plaintiff purchased her washing machine from a store in California, took delivery of the machine in California, used the machine at her home in California, and allegedly suffered injury in California.").

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

In *Mazza v. American Honda Motor Co., Inc.*, the Ninth Circuit held that a state's interest in regulating sales that take place in its own borders is of paramount importance in the choice of law inquiry. 666 F.3d 581, 594 (9th Cir. 2012) ("each class member's consumer protection claim should be governed by the consumer protection laws of the *jurisdiction in which the transaction took place*.") (emphasis added); *see also* Motion at 11. The quotation that Drover cites to try to undermine LGUSA's reliance on this case acknowledges a state's interest both in having its law applied to residents and in regulating sales within its borders:

> Every state has an interest in having its law applied to its resident claimants . . . *[A] jurisdiction also has the predominant interest in regulating conduct that occurs within its borders.* The automobile sales at issue in this case took place within 44 different jurisdictions, and *each state has a strong interest in applying its own consumer laws to those transactions*.

*Id*. at 592 (emphasis added) (internal citations and quotation omitted). Drover omits the critical point, however: the Ninth Circuit held that the law of the state in which the transactions occurred was the law that should be applied to the putative class member's consumer protection claims. *Id.*

Similarly, in *In re Grand Theft Auto Video Game Consumer Litig*., the United States District Court for the Southern District of New York held that, as between a plaintiff's residence and his or her state of purchase, the state of purchase has more significant contacts with, and a greater interest in, a plaintiff's consumer fraud claims:

> Here, for the purposes of conducting the interest analysis, the fraud of which each Settlement Class member complains occurred in the state where he purchased his copy of GTA:SA. . . [A]s states have a strong interest in protecting consumers with respect to sales within their borders, but they have a relatively weak interest, if any, in applying their policies to consumers or sales in neighboring states, the interest analysis favors the application of the consumer-fraud law of the state wherein each Settlement Class member purchased his copy of GTA:SA.

251 F.R.D. 139, 149-151 & n.12 (S.D.N.Y. 2008) (internal citations omitted). Drover cites to a different passage of this opinion, taken out of context, to contend that the court favored the place of domicile. Opp. at 9. He ignores both the court's analysis and the ultimate holding of the case: the law of the states where the purchases took place was applied.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

Drover cites three additional cases in support of his position, two of which do not involve a choice of law analysis at all.[5] Drover uses the third, *In re Ford Motor Company Ignition Switch Product Liability Litig.*, 174 F.R.D. 332, 347-48 (D.N.J. 1997), for the proposition that "each plaintiff's 'home state' has an interest in protecting its consumers from in-state injuries." Opp. at 5. The *Ford* court did use the term "home state" but in doing so it explicitly recognized that a so-called "home state's" interest in a plaintiff's claims can arise from a number of factors. The home state can be the place where the plaintiff resides, or, alternatively, the home state can be the place where the transaction occurred.[6] *Id.* at 348. The *Ford* court did *not* address any potential conflict between these locations.

The judicial preference for applying the law of the transaction state is consistent with the Restatement's goals of promoting uniformity and honoring the expectations of state legislatures and the parties to consumer transactions. Restatement § 6 (listing general policy considerations to be considered in determining choice of law); *accord In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 135 (E.D. Pa. 2011) (noting that "[a] place-of-purchase rule protects justified expectations because an in-state transaction will be governed by the antitrust laws and/or consumer protection laws of that state and not by the chance location of . . . an individual purchaser's residence . . . [It] also provide[s] consistent results because all purchases within a state will be treated uniformly.").[7]

[5] In *Dix v. ICT Grp., Inc.*, the court refused to enforce a forum selection clause requiring plaintiff to litigate all claims arising out of a service agreement in Virginia on the ground that the forum selection clause was contrary to public policy. 125 Wash. App. 929 (Wash. Ct. App. 2005). In *Aguayo v. U.S. Bank*, the court held that the National Bank Act did not preempt a California state statute related to pre-possession notices to a defrauding borrower. 653 F.3d 912 (9th Cir. 2011).

[6] The *Grand Theft Auto* court addressed the "loose" way in which courts used the term "home state" in their choice of law analyses in consumer protection cases. 251 F.R.D. at 149 n.12. Using *Ford* as an example, the Court in *Grand Theft Auto* noted that, although many courts "speak of the plaintiffs' 'home state' in deciding which law should apply to consumer-protection claims . . . they use the term 'home state' loosely, in the sense that it is 'the place where Plaintiffs reside, or the place where Plaintiffs bought and used their allegedly defective [products] or the place where Plaintiffs' alleged damages occurred." *Id*. In the vast majority of cases, courts do not need to make these determinations because plaintiffs ordinarily conduct the transaction in their place of domicile.

[7] In *Wellbutrin*, the court gave the example of "a hypothetical tourist visiting New York to see a Broadway Show who fills a prescription at a pharmacy in New York. For that pharmaceutical purchase, as well as the tourist's purchase of theater tickets, rental of a hotel room, purchase of souvenirs, etc., that tourist is a consumer in New York." *Id*.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

The Ninth Circuit, the Restatement, and corresponding public policy considerations support application of Utah law in this case. Drover has offered no authority or reason to hold otherwise. LGUSA therefore asks the Court to dismiss the Second Amended Complaint for lack of standing to pursue an action under the NDTPA.[8]

**B. The Second Amended Complaint Should Be Dismissed Even Under Nevada Law Because Drover Has Not Stated − And Cannot State − A Claim Under The NDTPA.**

1. Drover has failed to adequately allege a claim for misrepresentation under NRS 598.0915(5), (7), and (15).

As noted above and in the Motion, the Second Amended Complaint fails to identify a single written or oral representation by anyone at all that Drover received, reviewed, and/or relied on in deciding to purchase his television. Motion at 12-14. In his Opposition, Drover does not even attempt to cure this blatant deficiency. Rather, he tries to dodge the issue in two ways.

First, Drover asserts that the Court's May 22 Order held that the misrepresentation allegations in the First Amended Complaint were sufficient to satisfy Rule 9(b) and, by extension, the Second Amended Complaint also meets the pleading requirement for fraud claims. *See* Opp. at 9-11.

This misrepresents the Record. The Court's discussion of Rule 9(b) in the May 22 Order related *solely* to Drover's allegations of fraudulent concealment. *See* Motion at 13 n.3 (citing Doc. # 76 at 3-4). The Court did not make a finding about the affirmative misrepresentation claim because Drover had specifically represented in his opposition to LGUSA's motion to dismiss the First Amended Complaint that his claims were based on omissions only. *See* Motion at 13 (citing Doc. # 72 at 5). For all the reasons discussed in the Motion, Drover did not, and has not, stated a claim for affirmative misrepresentation with anything approaching the particularity required by Rule 9(b).

…

[8] In a footnote, Drover asks for leave to amend the Second Amended Complaint to attempt to state a claim under Utah law. Opp. 9 n.1. He does not attempt to address the reasons LGUSA showed in its Motion that amendment would be futile. *See* Motion at 11-12. For the reasons set forth therein, LGUSA respectfully requests that the Second Amended Complaint be dismissed with prejudice.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

Drover himself seems to concede the insufficiency of his misrepresentation claims, as he does not even attempt to defend them. Rather, he argues that he need not allege affirmative misrepresentations to state a claim under NRS 598.0915(5), (7), and (15); his burden is satisfied by alleging omissions. *See* Opp. at 11. This assertion is contradicted by the plain language of the provisions, each of which specifically prohibits knowingly false "*representations*" as to the quality of goods and services, *see* Motion at 13 n.4, while omissions are covered by an entirely separate provision in the statute.

Despite the statutory language, Drover relies on *Garner v. Bank of America Corp.* to support his position. Opp. at 11. He quotes the decision for the proposition that "the suppression or omission of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist." No. 2:12-CV-02076-PMP, 2014 WL 1945142, *8 (D. Nev. May 13, 2014) (citing *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007)). *Garner*, however, is inapposite. That court was analyzing the pleading requirements for common law fraud so it did not address the proper interpretation of the statutory language of the NDTPA. *Id.* at *7. *Garner* thus does *not* stand for the proposition that the suppression of a material fact can constitute a "false representation" for purposes of the statute as Drover asserts.

Moreover, as discussed in the Motion at 14-19 and Part IIB2, below, even if the Court accepts Drover's theory, his pleading still fails because LGUSA's purported omission of the alleged defect was not "material" as a matter of law. Accordingly, the suppression of that fact would not be the equivalent of a "false representation" even as defined by *Garner*. 2014 WL 1945142 at *8.

Drover has had three chances to identify a single misrepresentation made by LGUSA, and he has never been able to do so. LGUSA respectfully suggests that it is time to conclude that he cannot do so and asks the Court to dismiss Drover's claims based on NRS 598.0915(5), (7), and (15) with prejudice.

…

…

          McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

2. Drover's omission-based claim under NRS 598.0923(2) is precluded because the alleged defect did not manifest until after the warranty expired.

Drover does not dispute that his omission-based consumer fraud claim is based on LGUSA's alleged failure to disclose a defect that purportedly caused his television to malfunction at least *two years after the expiration* of its limited warranty. The section on which Drover relies provides that "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly . . . [f]ails to disclose a *material fact* in connection with the sale or lease of goods or services." NRS § 598.0923(2) (emphasis added).

As set forth more fully in LGUSA's Motion, courts around the country have held that a manufacturer cannot be liable under state consumer protection laws for the failure to disclose an alleged "defect" that does not manifest until after the warranty period has expired. *See* Motion at 14-19. These courts have done so for two reasons: (1) such an alleged omission is not "material;" and (2) there are no cognizable damages.

An omission is not "material" for consumer fraud purposes if it consists of a "manufacturer's failure to inform its customers of a product's likelihood of failing outside the warranty period." *Keegan v. American Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 940 (C.D. Cal. 2012) (quoting *Smith v. Ford Motor Co*., 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010)); *see also In re Sony Grand WEGA KDF-E A/10/A20 Series Rear Projection HDTV Television Litig*., 758 F. Supp. 2d 1077, 1095-96 (S.D. Cal. 2010); *Oestreicher v. Alienware Corp*., 544 F. Supp. 2d 964, 969 (N.D. Cal. 2009); *Daugherty v. American Honda Motor Co., Inc*., 144 Cal. App. 4th 824, 834-39 (Cal. Dist. Ct. App. 2006). As these courts have recognized, such an alleged omission could not be material because "the only expectation buyers could have had about the [product] was that it would function properly for the length of [the] express warranty, and it did." *Daughtery*, 144 Cal. App. 4th at 838. The only exception to this rule is if the alleged defect presents a risk to safety, which is not at issue here. *See id*; *see also* Motion at 14-17.

Second, where, as here, a product performs as promised throughout the warranty period and beyond, there has been no consumer fraud because the plaintiff has received the full benefit of his or her bargain and thus has not suffered cognizable damages. *See* Motion at 17-19. For

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

example, courts interpreting New Jersey's Consumer Fraud Act − one of the strongest consumer protection statutes in the country − have concluded that "failure of a manufacturer or seller to advise a purchaser that a part of a vehicle may break down or require repair after the expiration of the warranty period cannot constitute a violation of the CFA" because, in such cases, a consumer could not claim any ascertainable loss on which to base a claim. *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1004-1005 (N.J. Super. Ct. App. Div. 2006); *see also Daugherty*, 144 Cal. App. 4th at 839 (ruling, as an alternative basis for dismissal of plaintiff's consumer fraud claims under California law, that non-disclosure of a "defect" that manifests outside the warranty period does not constitute a "substantial injury" to consumers).

As LGUSA explained in its Motion, these sound principles compel dismissal of Drover's claims. Because Drover's television lasted well beyond the warranty period without incident, the alleged defect cannot be considered "material" as a matter of law and he has suffered no cognizable damages. Both are required to state a claim under the NDTPA, and therefore Drover's claim must be dismissed. *See* Fed. R. Civ. Proc. 12(b)(6). As the jurisdictions above have recognized, allowing consumer fraud claims to proceed where the product outperformed the warranty would improperly undo the limitations in manufacturer warranties. *See, e.g., Perkins*, 890 A.2d at 1005; *Daugherty*, 144 Cal. App. 4th at 830-31.

Drover makes no real attempt to attack these well-founded principles, which the Court has not yet addressed. Instead, he notes that LGUSA relied on cases from outside of Nevada (despite conceding that Nevada courts have not yet addressed the issue) and asserts that "the case law is not as absolute as LGUSA contends." Opp. at 13. For the latter proposition, Drover cites to a portion of the Southern District of California's decision in *Sony*.[9]

*Sony* supports LGUSA's position. In that case, the court explicitly noted that a claim alleging a defect that manifests only *after* the warranty has expired is not viable:

---

[9] Drover seizes on the *Sony* court's remark, in *dicta*, that, because plaintiffs had failed to sufficiently allege that Sony was aware of the defect when they purchased their televisions, they had also failed to show that the defendant's purported affirmative misrepresentations regarding the quality of the televisions were "false." *Id*. at 1090. The court's remark regarding plaintiffs' failure to adequately support their claim for affirmative misrepresentation does not cast any doubt whatsoever on the general rule cited by the court above.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

> For a statement to be deceptive or misleading, consumers must have held expectations about the matter in question [and w]here a manufacturer has expressly warranted a product, consumers can only expect that product to function properly for the length of the manufacturer's express warranty.

758 F. Supp. 2d at 1089.

Drover also takes issue with LGUSA's reference to *Progressive Insurance Company v. Sacramento County Coach Showcase* in which Judge Pro dismissed a claim for breach of express warranty where the alleged defect did not manifest until after the warranty period expired. No. 2:07-cv-01087, 2008 WL 5377993, *3-*4 (D. Nev. Dec. 23, 2008). Drover argues that this case "does not establish Nevada law with respect to the NDTPA" because it involved a claim for breach of express warranty. Opp. at 13. Drover misses the point. As LGUSA argued in its Motion, *Progressive* merely illustrates that a Nevada court, considering a claim based on an expired warranty, relied on the same principles and the same California precedent that LGUSA cited in its Motion to hold that a claim based on an expired warranty is not viable. *See* Motion at 17. Notably, Drover offers no contrary case law from Nevada or any other jurisdiction. Nor does he cite any reason to believe that Nevada courts would depart from the decisions that rest on well-settled contract law principles.

Because Drover's television performed as warranted until well after the warranty expired, Drover cannot state a claim for consumer fraud based on a failure to disclose the alleged defect. His claim under NRS 598.0923(2) should be dismissed with prejudice on this ground alone.

3. Drover fails to plead the circumstances of any fraudulent omission with the requisite particularity.

In addition to the fatal infirmities discussed above, Drover's omission-based claim also fails because it is not pled with the requisite particularity under Rule 9(b).[10] Drover argues that

[10] In its Motion, LGUSA acknowledged that the Court previously found Drover's allegations of fraudulent concealment in the First Amended Complaint sufficient to satisfy the Rule 9(b) pleading standard, but asked the Court to consider Rule 9(b) when evaluating the allegations of the Second Amended Complaint. *See* Motion at 19 n.10. Contrary to Drover's assertion, Opp. at 10 n.2, LGUSA's request is not improper. Courts in this Circuit permit defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available. *See, e.g.*, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *overruled in part on other grounds*, *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (an "amended complaint supersedes the original, the latter being treated thereafter as nonexistent"); *Sony*, 758 F. Supp. 2d at 1098; *Turner v. Tierney,* No. 12-6231, 2013 WL 2156264, *3 (N.D. Cal. May 17, 2013).

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

his claim should be allowed to proceed because the Rule 9(b) standard is relaxed with respect to claims for fraudulent omissions. Opp. at 12. In *MacDonald v. Ford Motor Co*., the only case on which Drover relies for this proposition, the Northern District of California recognized that a plaintiff pleading an omission claim may not be able to allege with particularity when or how a particular piece of information should have been disclosed to consumers. 13-02988, 2014 WL 1340339, *6 (N.D. Cal. Mar. 31, 2014). The court did *not*, however, relax the requirement that a plaintiff adequately plead that the defendant had knowledge of the alleged defect before the plaintiffs' purchases. *Id*. at *3-*6.

The allegations proffered by the *MacDonald* plaintiffs are in striking contrast to those Drover makes here and serve to illustrate the stark deficiency of his claim. In *MacDonald*, plaintiffs alleged consumer fraud with regard to a defective coolant pump. To show defendant's knowledge of the defect, plaintiffs cited to (1) statements in three different internal Ford bulletins detailing problems with the coolant pump; (2) an interview with Ford's engineering manager in which he mentioned problems with the pump; and (3) a sample of complaints from the time period before plaintiffs' purchases specifically referencing the alleged defect. 2014 WL 1340339 at *3-*5. Significantly for Drover's claim, the court acknowledged that, under Ninth Circuit precedent, the complaints alone were insufficient to support a plausible claim that Ford was aware of the alleged defect before plaintiffs' purchases. *Id*. at *5 (citing *Wilson v. Hewlett–Packard Co*., 668 F.3d 1136, 1147 (9th Cir. 2012)). When the complaints were considered in conjunction with the internal service bulletins and the interview, however, the Court held that plaintiff had pled sufficient facts to infer knowledge. *Id*. at *5-*6.

In sharp contrast, Drover's Second Amended Complaint does not contain *any* facts to support an inference that LGUSA knew about the alleged defect at *any* point in time. The only allegation with respect to "knowledge" that appears in the Second Amended Complaint is the conclusory statement that "purchasers . . . have complained to LG about the Defect, as evidenced by the numerous complaints found on the internet." SAC ¶ 11. As the court noted in *MacDonald*, such complaints standing alone are insufficient to support a plausible claim in the Ninth Circuit. 2014 WL 1340339 at *5.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

Moreover, the Second Amended Complaint is deficient by any measure. It does not identify the content or the location or even the date of the purported "complaints" much less provide the kind of support found sufficient in *MacDonald*. Implicitly conceding this deficiency, Drover improperly attempts to supplement his pleading by asserting in the Opposition that the complaints were located on websites "such as AVForums.com, Badcaps.net Forum, and Electro Tech Online." Opp. at 11. Drover also cites to a Wikipedia article purportedly describing "a rash of capacitors with higher than expected premature failure rate" in 2002.[11] *Id.*

These new allegations are also inadequate. Drover lists random website names, but does not identify a single complaint that actually appears on those websites. The Wikipedia article on which Drover relies does not even refer to LGUSA or the purported class televisions. *See* http://en.wikipedia.org/wiki/Capacitor_plague.

Drover's allegations do not satisfy any pleading standard, no matter how "relaxed." *See also* Motion at 19-21. Accordingly, LGUSA respectfully requests that Drover's omission-based claims, however labeled under the NDTPA, be dismissed with prejudice.

**C. Drover's Class Claims Should Be Stricken.**

LGUSA showed in its Motion why, even if the Court permits Drover's individual claims to proceed, it should strike the class claims. *See* Motion at 21-26. Drover primarily argues that LGUSA's motion to strike should be denied because the determination as to whether or not class claims can proceed is typically made at the class certification stage. He also argues that issues of reliance and damages will not preclude class certification. *See* Opp. at 14-16.

LGUSA recognizes that motions to strike are not appropriate in all circumstances. Nevertheless, dismissal of class claims before discovery is warranted "if the plaintiff does not allege facts sufficient to make out a class." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 655 (D. Nev. 2009) (dismissing class claims based on pleadings before discovery); *see also* Motion at 22. As a court in this district has noted, "[i]f, as a matter of law, a class cannot be certified . . . ,

[11] These allegations do not appear in the Second Amended Complaint, and therefore they cannot be considered by the Court in deciding LGUSA's motion. *See, e.g.*, *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). LGUSA pointed out the impropriety of supplementing the pleading in motion practice in its reply on the last motion to dismiss, yet Drover failed to include these allegations in the Second Amended Complaint.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

it would be a waste of the parties' resources and judicial resources to conduct discovery on class certification." *Id*. (international citation omitted).

That is the case here. It is clear on the face of the Second Amended Complaint that Drover's claims are not typical of the claims that could be asserted by his putative class. For example, Drover's claims are governed by Utah, and not Nevada law; accordingly, Drover lacks standing to pursue an NDTPA claim on behalf of his proposed class of Nevada purchasers.[12] *See* Motion at 23.

LGUSA also explained in its Motion why it is apparent on the face of the Second Amended Complaint that individual issues of reliance, causation, and damages will overwhelm any common issues and make a class action unmanageable. *See* Motion at 23-26.

Drover does not appear to dispute that reliance is a required element and will generally preclude class certification to the extent his claims are based on affirmative misrepresentations. Opp. at 15-16 (distinguishing cases involving affirmative misrepresentations). Instead, Drover resorts to his fallback position that all of his claims under the NDTPA are based on omissions. *See* Opp. at 15 ("It should be emphasized that this case involves omissions on the part of LG"). Even if this is true, individual issues will still predominate as to causation and damages.

Drover does not address causation at all, and he gives only short shrift to LGUSA's argument that individual questions of damages will defeat class certification. Specifically, Drover asserts that the Court need not worry about individual damages issues because his proposed class consists only of purchasers of "defective" televisions. *See* Opp. at 16. This is not clear from the face of the Second Amended Complaint. If this is Drover's intended class definition, however, then the class claims are subject to dismissal on the alternative ground that Drover's class definition is inadequate. As this Court has held, a "class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Rader v. Teva Parenteral Med., Inc.*, 276 F.R.D. 524, 528-29 (D. Nev. 2011) (internal citations and quotations omitted) (plaintiff's proposed class definition ran "afoul" of this standard where the court would have to make individualized determinations

[12] Drover cannot bring a class action under Utah law. *See* Motion at 23 n.15.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

regarding the merits of putative class members' claims to determine whether a person was a member of the proposed class); *see also In re Wal-Mart Wage and Hour Litig*., No. 2:06-00225, 2008 WL 3179315, *20 (D. Nev. Jun. 20, 2008) (same).

Such a merits determination must take place here. To determine whether an individual is properly a member of the class will require the Court to make a factual determination in the first instance as to whether the putative member's television actually experienced the alleged defect. This determination is in addition to all the other individualized damages issues discussed in the Motion. *See* Motion at 23-26.

For these reasons and those discussed in the Motion, it would be a waste of the parties' and judicial resources to let the class claims proceed. LGUSA therefore respectfully requests that, if Drover's individual claims are not dismissed, the Court nonetheless strike the class claims.

## III. CONCLUSION

For the reasons set forth herein and in LGUSA's Motion to Dismiss, LGUSA respectfully requests that the Second Amended Complaint be dismissed with prejudice. In the alternative, LGUSA asks that the court strike the class claims.

DATED this 25th day of September, 2014.

McDONALD CARANO WILSON LLP

By: /s/ Kristen T. Gallagher

Pat Lundvall (NSBN 3761)
Kristen T. Gallagher (NSBN 9561)
2300 W. Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone: 702.873.4100
Facsimile: 702.873.9966
lundvall@mcdonaldcarano.com
kgallagher@mcdonaldcarano.com

Sandra C. McCallion (admitted *pro hac vice*)
S.C. Sohn (admitted *pro hac vice*)
Thomas E. Bezanson (admitted *pro hac vice*)
Christopher M.P. Jackson (admitted *pro hac vice)*
Matthew V. Povolny (admitted *pro hac vice*)
COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, NY 10022
Phone: 212.957.7600

Fax: 212.957.4514
smccallion@cohengresser.com
scsohn@cohengresser.com
tbezanson@cohengresser.com
cjackson@cohengresser.com
mpovolny@cohengresser.com

*Attorneys for Defendant LG ELECTRONICS USA, INC.*

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of McDonald Carano Wilson LLP, and that on this 25th day of September, 2014, I caused a true and correct copy of the foregoing **DEFENDANT LG ELECTRONICS USA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** to be served via the U.S. District Court's Notice of Electronic Filing ("NEF") in the above-captioned case, upon the following:

Dennis L. Kennedy, Esq. (NSBN 1462)
Joseph A. Liebman, Esq. (NSBN 10125)
BAILEY KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: (702) 562-8820
Facsimile: (701) 562-9921
dkennedy@baileykennedy.com
jliebman@baileykennedy.com

WILLIAM B. FEDERMAN
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405)235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
(admitted *pro hac vice*)

*Attorneys for Plaintiff Kevin Drover*

/s/ Kristen T. Gallagher
An employee of McDonald Carano Wilson LLP

317121